# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

MIGUEL RAMIREZ,

                             Plaintiff,

v.

COUNTY OF SAN DIEGO, et al.,

                           Defendants.

Case No. 24-cv-366-MMA-BLM

**ORDER GRANTING IN PART DEFENDANT MARIA LOPEZ'S MOTION TO DISMISS; AND**

[Doc. No. 5]

**GRANTING IN PART DEFENDANT COUNTY OF SAN DIEGO'S MOTION TO DIMISS**

[Doc. No. 6]

       Plaintiff Miguel Ramirez brings this civil rights action against the County of San Diego (the "County"), Maria Lopez, and Does 1 through 15 pursuant to 42 U.S.C. § 1983. Doc. No. 1. Pending before the Court are the County's and Lopez's motions to dismiss. *See* Doc. Nos. 5, 6. Plaintiff filed responses in opposition to the motions, *see* Doc. Nos. 13, 14, to which the County replied, *see* Doc. No. 16. The Court found these motions suitable for determination on the papers and without oral argument pursuant to Civil Local Rule 7.1.d.1. *See* Doc. No. 8. For the reasons set forth below, the Court **GRANTS IN PART** the motions.

# I. BACKGROUND[1]

On January 3, 2023, Plaintiff surrendered to the custody of the San Diego County Sheriff's Department to serve a criminal sentence.  Doc. No. 1 ("Compl.") ¶ 30.  He was transported by Sheriff's Department Deputies to the County's Men's Central Jail ("MCJ").  *Id.*  Once at MCJ, County staff performed an x-ray of Plaintiff's body, and the scan did not reveal any indication of concealed contraband.  *Id.* ¶ 33.  Nevertheless, Plaintiff "was ordered to strip naked, expose his genitals, expose his anus, and perform a series of movements while remaining naked in front of others."  *Id.* ¶ 34.  Although Plaintiff could not perform all of the movements due to an injury, which he communicated to County staff, he otherwise complied with the instructions of this first strip search (the "First Strip Search").  *Id.* ¶¶ 35–36.  During the First Strip Search, Plaintiff was required to remain naked for longer than other inmates being searched.  *Id.* ¶ 37.  The First Strip Search uncovered no evidence of contraband concealed within Plaintiff's body.  *Id.* ¶ 39.

After the First Strip Search, County staff obtained a pelvic x-ray that similarly revealed no concealed contraband.  *Id.* ¶ 40.  A few hours later, however, Plaintiff underwent a second strip search (the "Second Strip Search").  *Id.* ¶ 41.  During the Second Strip Search, Does 7 through 9 compelled Plaintiff to remain naked and exposed and Doe 7 directed "humiliating, vulgar, and sexual language" at Plaintiff while he was "naked and exposed."  *Id.* ¶¶ 42, 44.  The Second Strip Search uncovered no evidence of contraband concealed within Plaintiff's body.  *Id.* ¶ 45.

After the Second Strip Search, County staff obtained a third x-ray of Plaintiff's body, which again revealed no evidence of contraband.  *Id.* ¶ 46.  Plaintiff alleges that after the Second Strip Search and the third digital imagery, County staff had no reasonable basis for believing Plaintiff was concealing contraband in his body.  *Id.* ¶ 47.

---

[1] Because this matter is before the Court on a motion to dismiss, the Court accepts as true the allegations set forth in the Complaint.  *See Hosp. Bldg. Co. v. Trs. Of Rex Hosp.*, 425 U.S. 738, 740 (1976).

Nevertheless, Does 1 through 6 ordered that Plaintiff be taken to a nearby hospital to submit to a manual cavity search. *Id.* ¶ 56.  Doe 1 told Plaintiff they were taking him to the hospital and that Plaintiff was "not going to like it." *Id.* ¶ 57.  Before Plaintiff was transported to the hospital, a fourth x-ray was performed at MCJ. *Id.* ¶ 60.  The fourth x-ray revealed no contraband concealed within Plaintiff's body. *Id.* ¶ 57.

On January 5, 2023, Plaintiff was transported to Alvarado Hospital ("Alvarado") by Does 2 and 3. *Id.* ¶¶ 62, 65.  They arrived at Alvarado's emergency room at 2:15 a.m. *Id.* ¶ 65.  Plaintiff alleges that Does 1, 2, and 3 told the emergency room staff that they believed Plaintiff was concealing contraband in his anal cavity and ordered that a manual anal cavity search be performed. *Id.* ¶¶ 66, 70–73.

Plaintiff objected to the search but otherwise complied. *Id.* ¶¶ 103–05.  He was taken to a room where he was visited by Lopez, a doctor at Alvarado. *Id.* ¶ 106.  While preparing for the cavity search, Lopez made demeaning, sexual, embarrassing, and harassing comments to Plaintiff. *Id.* ¶ 117.  Does 2 and 3 handcuffed Plaintiff to a bed and Lopez performed the search while Does 2 and 3 were present. *Id.* ¶¶ 94, 119.  The search revealed no contraband. *Id.* ¶ 126.

After the cavity search, Lopez sent Plaintiff for a CT scan, which again revealed no contraband concealed in Plaintiff's body. *Id.* ¶ 129.  Plaintiff was then transported to the George F. Bailey Detention Center ("Bailey"). *Id.* ¶ 132.  Once at Bailey, Does 10 through 15 subjected Plaintiff to a third strip search (the "Third Strip Search"). *Id.* ¶ 134.  The Third Strip Search revealed no contraband. *Id.* ¶ 143.

As a result, Plaintiff brings sixteen claims: (1) unreasonable search in violation of the Fourth Amendment against Lopez and Does 1 through 6; (2) excessive force in violation of the Fourth Amendment against Lopez and Does 1 through 6; (3) excessive force in violation of the Eighth Amendment against Lopez and Does 1 through 6; (4) sexual assault in violation of the Eighth Amendment against Lopez and Does 1 through 6; (5) failure to protect in violation of the Eighth Amendment against Does 1 through 6; (6) *Monell* liability for an unconstitutional custom, policy, and training against

the County; (7) unreasonable strip search in violation of the Fourth Amendment against Does 7 through 9; (8) unreasonable strip search in violation of the Fourth Amendment against Does 10 through 15; (9) battery against the County, Lopez, and Does 1 through 6; (10) medical battery against the County, Lopez, and Does 1 through 6; (11) assault against the County, Lopez, and Does 1 through 6; (12) sexual battery in violation of California Civil Code § 1708.5 against the County, Lopez, and Does 1 through 6; (13) violation of the Bane Act, Cal. Civ. Code § 52.1 against all Defendants; (14) negligence against all Defendants; (15) sexual harassment in violation of California Civil Code § 51.9 against Lopez; and (16) intentional infliction of emotional distress against all Defendants.

## II. LEGAL STANDARD

A motion pursuant to Federal Rule of Civil Procedure[2] 12(b)(6) tests the legal sufficiency of the claims made in the complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), such that the defendant is provided "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, plaintiffs must also plead "enough facts to state a claim to relief that is plausible on its face." Fed. R. Civ. P. 12(b)(6); *Twombly*, 550 U.S. at 570. The plausibility standard demands more than "a formulaic recitation of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Instead, the complaint "must contain allegations of underlying facts sufficient to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

---

[2] Unless otherwise noted, all "Rule" references are to the Federal Rules of Civil Procedure.

In reviewing a motion to dismiss under Rule 12(b)(6), courts must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party.  *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996).  A court need not take legal conclusions as true merely because they are cast in the form of factual allegations.  *See Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir. 1987).  Similarly, "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Where dismissal is appropriate, a court should grant leave to amend unless the plaintiff could not possibly cure the defects in the pleading.  *See Knappenberger v. City of Phoenix*, 566 F.3d 936, 942 (9th Cir. 2009) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000)).

## III. DISCUSSION

The County and Lopez raise a variety of arguments challenging the sufficiency of Plaintiff's pleading.  Additionally, they argue they are entitled to immunity, and the County argues that Plaintiff has not demonstrated compliance with the Prison Litigation Reform Act of 1995 ("PLRA").  The Court addresses each argument in turn.

### A.   Rule 8(d) and Doe Pleading

As an initial matter, the County moves to dismiss the entire Complaint on the basis that it is so unduly vague that it fails to satisfy Rule 8(d).  Doc. No 6-1 at 19.  The Court disagrees.  Rule 8(d) provides that "[e]ach allegation must be simple, concise, and direct."  Fed. R. Civ. P. 8(d)(1).  Plaintiff has factually pleaded what took place at MCJ, Alvarado, and Bailey giving rise to his claims.  Generally speaking, Plaintiff's allegations are simple, concise, and direct.  And while some finer details appear to be missing, *see* Doc. No. 6-1 at 20 ("Did the alleged 'second strip search' occur within an hour of the first search or longer? Did it occur during the intake process or afterwards?"), the relevant allegations are not so vague that Defendants cannot respond.  Further, it would be premature for the Court to dismiss Plaintiff's claims merely because he has not

identified the Does by name.  While the use of Doe pleading is generally disfavored in federal court, in circumstances where the identity of the defendants is not known prior to the filing of a complaint, "the plaintiff should be given an opportunity through discovery to identify the unknown defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  Incidentally, Plaintiff has obtained leave to conduct limited, early discovery aimed at discovering the Doe Defendants' identities. Doc. No. 19.  And the remainder of the County's arguments in support of their request for dismissal under Rule 8(d) can be better characterized as Rule 12(b)(6) arguments. Accordingly, to the extent the County seeks dismissal pursuant to Rule 8(d), or for failure to name the Doe Defendants, the Court **DENIES** its motion.

**B.    PLRA Exhaustion**

The PLRA "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 578 U.S. 632 (2016) (quoting 42 U.S.C. § 1997e(a)).  "[M]andatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." *Id.* at 639.  The law requires proper exhaustion, meaning compliance with "deadlines and other critical procedural rules, with no exceptions for special circumstances." *Ramirez v. Collier*, 595 U.S. 411, 421 (2022) (internal quotation marks and citations omitted); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("[P]roper exhaustion . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).") (emphasis in original) (internal quotation marks and citation omitted). "The only limit to § 1997e(a)'s mandate is the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" *Ross*, 578 U.S. at 648.

Exhaustion "gives prisoners an effective incentive to make full use of the prison grievance process and accordingly provides prisons with a fair opportunity to correct their own errors." *Woodford*, 548 U.S. at 94; *see also Jones v Bock*, 549 U.S. 199, 204 (2017).  Failure to exhaust under § 1997e(a) is an affirmative defense that defendants

have the burden of raising and proving. *Jones*, 549 U.S. at 216 ("We conclude that failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints."); *El-Shaddai v. Zamora*, 833 F.3d 1036, 1043–44 (9th Cir. 2016) ("Under the PLRA, a plaintiff must exhaust all administrative remedies before bringing suit against prison officials, but is not required to affirmatively allege that he has done so in order to state a cognizable claim."); *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (*en banc*) (explaining that failure to exhaust under the PLRA is "an affirmative defense the defendant must plead and prove").

The County argues that Plaintiff "admits he did not take the necessary steps to exhaust his pre-litigation administrative remedies." Doc. No. 6-1 at 22. But Plaintiff alleges that he submitted multiple grievances in January 2023, and that the County responded by "declaring them resolved." Compl. ¶¶ 15, 17. According to Plaintiff, he was not informed of any option to appeal and therefore had no means of appealing further. *Id.* ¶¶ 17–18.

Plaintiff need not prove he exhausted his administrative remedies at this stage, he must only plausibly allege his compliance with the PLRA. *See Enriquez v. Cty. of San Diego*, No. 23-cv-903-BEN (SBC), 2024 U.S. Dist. LEXIS 54342, at *6 (S.D. Cal. Mar. 26, 2024). And here, Plaintiff plausibly pleads that he exhausted the administrative remedies that were available to him. Therefore, to the extent the County seeks dismissal of Plaintiff's claims for failure to satisfy the PLRA's exhaustion requirements, the Court **DENIES** the motion.

## C. Fourth Amendment Claims

Plaintiff brings four Fourth Amendment claims: (Claim 1) unreasonable search against Lopez and Does 1 through 6; (Claim 2) excessive force against Lopez and Does 1 through 6; (Claim 7) unreasonable strip search against Does 7 through 9; and (Claim 8) unreasonable strip search against Does 10 through 15.

To begin, Plaintiff pleads two excessive force claims against Lopez and Does 1 through 6, one pursuant to the Fourth Amendment and a second pursuant to the Eighth

Amendment.  *See* Compl. at 19, 21.  In his Complaint, Plaintiff supplies a footnote to the latter claim, stating: "The excessive force used against Mr. Ramirez is appropriately analyzed under the Fourth Amendment. In the alternative, Mr. Ramirez alleges this separate cause of action identifying the standard under the Eighth Amendment." *Id.* at 21 fn.1.

The Fourth Amendment's objective reasonableness standard governs a free citizen's excessive force claim.  *Hughes v. Rodriguez*, 31 F.4th 1211, 1220 (9th Cir. 2022) (citing *Graham v. Connor*, 490 U.S. 386, 388 (1989)).  This standard is also applicable to pretrial detainees' excessive force claims.  *See, e.g.*, *Pierce v. Multnomah Cty.*, 76 F.3d 1032, 1043 (9th Cir. 1996) (providing that the Fourth Amendment sets the applicable constitutional standard for use of force against pretrial detainees).  But "[a]fter conviction, 'the Eighth Amendment, which is specifically concerned with the unnecessary and wanton infliction of pain in penal institutions, serves as the primary source of substantive protection to convicted prisoners.'" *Hughes*, 31 F.4th at 1220 (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)); *see also Helling v. McKinney*, 509 U.S. 25, 31 (1993) ("It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment."); *cf. Dennis v. Thurman*, 959 F. Supp. 1253, 1257 n.1 (C.D. Cal. 1997) ("Since the plaintiff was not a pre-trial detainee at the time, he cannot assert a Fourth Amendment claim, rather, it is the Eighth Amendment that is implicated in excessive force claims by a convicted prisoner.").

Here, Plaintiff pleads that he surrendered "to serve a criminal sentence stemming from charges in state court."  Compl. ¶ 30.  Therefore, accepting the allegations as true, the Court can only reasonably infer that Plaintiff was a convicted prisoner at the time of the events alleged in the Complaint.  There is nothing inherent in the Eighth or Fourth Amendment standards to suggest that the applicable test turns on the location of the use of force as opposed to the individual's status in the legal system.  Therefore, on this record, it is of no consequence that the alleged force took place at Alvarado as opposed to

MCJ or some other correctional facility.  The Court therefore finds that Plaintiff fails to state a Fourth Amendment excessive force claim.  Consequently, the Court **DISMISSES** Plaintiff's Fourth Amendment excessive force claim (Claim 2).

Turning to Plaintiff's unconstitutional search claims, the Fourth Amendment protects individuals from "unreasonable searches" by government officials.  U.S. Const. amend. IV; *see also Pike v. Hester*, 891 F.3d 1131, 1137 (9th Cir. 2018).  To determine whether a particular search is unreasonable, the intrusion on the individual's privacy interests must be balanced against "its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. 648, 654 (1979).  A prison "is a unique place fraught with serious security dangers. Smuggling of money, drugs, weapons, and other contraband is all too common an occurrence." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979).  Therefore, to determine whether a search in the prison context is reasonable under the Fourth Amendment, the prison's "significant and legitimate security interests" must be balanced against the invasion of privacy of those who enter, or seek to enter, the prison; "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* at 559–60.

### 1. *Lopez and Does 1 through 6*

Plaintiff's first unreasonable search claim is based on the body cavity search at Alvarado, and he brings this claim against Lopez and Does 1 through 6.  "To establish § 1983 liability, a plaintiff must show both (1) the deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).  Here, Plaintiff alleges that Lopez acted under color of state law when she performed the search.  Compl. ¶ 23.  Lopez does not substantively challenge this element.[3]  Rather, Lopez argues that Plaintiff fails to state a claim against her

---

[3] In the introduction of her motion to dismiss, Lopez argues that "[s]he is not a state actor in any capacity." Doc. No. 5-1 at 2.  But the remainder of her motion is devoid of meaningful argument on this

because she performed the search at the direction of the deputies, and that the search was both justified and reasonable.  Doc. No. 5-1 at 7.

"The intrusiveness of a body cavity search cannot be overstated." *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1445 (9th Cir. 1991) (quoting *Kennedy v. Los Angeles Police Dep't*, 901 F.2d 702, 711 (9th Cir. 1989)).  "The Fourth Amendment permits these searches, even of inmates, only in limited circumstances." *Cates v. Stroud*, 976 F.3d 972, 980 (9th Cir. 2020) (collecting cases).  "Prisoners may be subjected to visual body cavity strip searches based on reasonable suspicion in order to protect prisons and jails from smuggled weapons, drugs or other contraband which pose a threat to the safety and security of penal institutions." *Id.* (internal quotation marks and citation omitted).  Thus, based on the government's "strong interest in preventing contraband from entering its prisons and jails, . . . visual body cavity searches may be performed without a warrant during the jail intake process." *United States v. Fowlkes*, 804 F.3d 954, 961 (9th Cir. 2015).  However, "searches that require intrusion into a person's body implicate greater constitutional concerns." *Id.*  "Therefore, while visual cavity searches that do not require physical entry into a prisoner's body are generally permissible without a warrant during the jail intake process, physical cavity searches generally are not." *Id.*

Here, Plaintiff pleads a sufficiently significant intrusion.  According to Plaintiff, the search was ordered by Does 1 through 6, *see* Compl. ¶ 56, and conducted by Lopez, *see id.* ¶ 118.  Among other allegations, Plaintiff pleads that the search was performed despite two strip searches and four x-rays revealing no signs of contraband.  *See id.* ¶¶ 32 (first x-ray), 34 (First Strip Search), 40, (second x-ray), 41 (Second Strip Search), 46 (third x-ray), 60 (fourth x-ray).  Even "a clear indication that the suspect is concealing contraband does not authorize government officials to resort to any and all means at their disposal to retrieve it." *United States v. Cameron*, 538 F.2d 254, 258 (9th Cir. 1976).

---

issue.  Therefore, the Court only considers whether Plaintiff has plausibly pleaded his constitutional deprivation and not whether Lopez was acting under the color of state law.

1    "Any body search, if it is to comport with the reasonableness standard of the fourth

2    amendment, must be conducted with regard for the subject's privacy and be designed to

3    minimize emotional and physical trauma."  *Id.*  And here, Plaintiff pleads that Lopez and

4    Does 1 through 6 were aware of less invasive measures.  *See, e.g.*, Compl. ¶¶ 90, 110.

5    Therefore, accepting the factual allegations as true, the Court finds that Plaintiff plausibly

6    pleads a Fourth Amendment unreasonable search claim against Lopez and Does 1

7    through 6.  Accordingly, the Court **DENIES** Lopez's motion to dismiss Claim 2.

8         ***2.    Does 7 through 15***

9         Plaintiff's seventh and eighth claims are for unreasonable searches against Does 7

10   through 9 and Does 10 through 15, respectively, and these two claims are factually

11   premised on the Second and Third Strip Searches.  "Correctional officials have a

12   significant interest in conducting a thorough search as a standard part of the intake

13   process."  *Florence v. Bd. of Chosen Freeholders*, 566 U.S. 318, 330 (2012).  However,

14   any searches done for the purpose of harassment are not constitutionally valid—the

15   Supreme Court has held that "intentional harassment of even the most hardened criminals

16   cannot be tolerated" by the Fourth Amendment's protections.  *Hudson v. Palmer*, 468

17   U.S. 517, 528 (1984).  Additionally, strip searches that are excessive, vindictive,

18   harassing, or unrelated to any legitimate penological interest may violate the Fourth

19   Amendment.  *Michenfelder v. Sumner*, 860 F.2d 328, 332 (9th Cir. 1988).

20        Plaintiff pleads that Does 7 through 9 conducted the Second Strip Search at MCJ

21   and forced him to remain naked and exposed in front of others for a prolonged period of

22   time.  *See* Compl. ¶¶ 44, 225.  Plaintiff also alleges that Doe 7 made comments directed

23   towards him during the Second Strip Search that were humiliating, vulgar, and sexual, to

24   harass and frighten him, *id.* ¶¶ 42–43.  According to Plaintiff, subjecting him to a

25   prolonged and invasive Second Strip Search did not serve any penological objective and

26   was unreasonable and not based on any suspicion.  *Id.* ¶ 225.

27        Plaintiff further alleges that once at Bailey, Does 10 through 15 conducted the

28   Third Strip Search.  Compl. ¶ 134.  According to Plaintiff, these Does singled him out for

another strip search despite knowing Plaintiff had already been cleared of possessing contraband, including the cavity search at Alvarado. *Id.* ¶¶ 133, 134. Plaintiff contends that he lacked access to contraband in the intervening periods and therefore that the Third Strip Search served no investigative or security purpose. *Id.* ¶ 135. Plaintiff further alleges that he was experiencing bleeding and distress from the cavity search, and that this search was designed to mock and further embarrass him. *Id.* ¶¶ 136–41. As with the Second Strip Search, Plaintiff contends that the Third Strip Search was unreasonable, unrelated to any penological objectives, and not based on reasonable suspicion. *Id.* ¶ 235.

The County only challenges these claims based upon Plaintiff's use of Doe pleading. But the Court finds that Plaintiff has sufficiently identified these Does for the purpose of stating a claim against them. Moreover, the Court finds that these allegations plausibly state Fourth Amendment unreasonable search claims. Therefore, to the extent the County challenges Claims 7 and 8, the Court **DENIES** the County's motion.

**D.   Eighth Amendment Claims**

Plaintiff's third, fourth, and fifth claims are for violations of the Eighth Amendment. Namely, he presses an excessive force claim and a sexual assault claim against Lopez and Does 1 through 6, as well as a failure to protect claim against Does 1 through 6. Defendants do not challenge Plaintiff's failure to protect claim.

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials. *Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Wood v. Beauclair*, 692 F.3d 1041, 1045 (9th Cir. 2012). This includes punishments that "involve the unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). Relevant here, the Eighth Amendment supplies the standard for excessive force and sexual assault claims in the prison context. *See Bearchild v. Cobban*, 947 F.3d 1130, 1140 (9th Cir. 2020) ("Here, our inquiry focuses on the [excessive force] category because Bearchild pleaded a sexual assault claim and we have consistently placed prisoner sexual assault claims within the same legal framework as excessive force claims.").

An Eighth Amendment excessive force claim has two components: "(1) a 'subjective' inquiry into whether prison staff acted 'with a sufficiently culpable state of mind'; and (2) an 'objective component' that ask[s] whether 'the alleged wrongdoing was objectively harmful enough to establish a constitutional violation.'" *Id.* (quoting *Hudson*, 503 U.S. at 8). The subjective inquiry "turns on whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7 (quoting *Whitley*, 475 U.S. at 320–21). The objective component is "contextual and responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle*, 429 U.S. at 103); *see also Bearchild*, 947 F.3d at 1141 (explaining that the test for determining whether a deprivation is objectively sufficiently serious "may evolve as 'the basic mores of society change'") (quoting *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008)).

Courts in the Ninth Circuit apply a five-factor test for determining whether the use of force rises to the level of a constitutional violation: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response." *Furnace v. Sullivan*, 705 F.3d 1021, 1028 (9th Cir. 2013) (quoting *Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003)). Whether a specific act constitutes cruel and unusual punishment is measured by "the evolving standards of decency that mark the progress of a maturing society." *Hudson*, 503 U.S. at 8.

Lopez summarily argues that Plaintiff's allegations do not support an excessive force claim. Doc. No. 5-1 at 8. But Plaintiff plausibly alleges that the force used in performing the cavity search was unnecessary considering the prior x-rays and strip searches revealed no indications of contraband, and that less severe alternatives were ignored and avoided. Moreover, Plaintiff pleads that Lopez and Does 1 through 6 acted with the requisite mental state. Compl. ¶ 171. The County, on the other hand, argues that mere comments alone do not rise to the level of an Eighth Amendment violation.

Doc. No. 6-1 at 16.  But Plaintiff's excessive force claim is not based on verbal harassment but physical touching.  And these allegations, *see id.* ¶¶ 57, 117, lend plausibility to Plaintiff's assertion that Lopez and Does 1 through 6 maliciously ordered and performed the cavity search.  Accordingly, the Court finds that Plaintiff has plausibly pleaded an excessive force claim against Lopez and Does 1 through 6 and therefore **DENIES** Defendants' motions to dismiss Claim 3.

Turning to Plaintiff's fourth claim, "[s]exual harassment or abuse of an inmate by a corrections officer is a violation of the Eighth Amendment."  *Wood*, 692 F.3d at 1046 (citing *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000)).  But not every malevolent touch gives rise to an Eighth Amendment claim.  *Hudson*, 503 U.S. at 9.  In evaluating an inmate's claim, courts consider whether "the officials act[ed] with a sufficiently culpable state of mind" and if the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation.  *Wood*, 692 F.3d at 1046 (quoting *Hudson*, 503 U.S. at 8).

Lopez summarily asserts that her conduct does not support a sexual assault claim because she was advised by deputies that the search was legal and necessary.  Doc. No. 5-1 at 8.  For the same reasons discussed above, the Court is not persuaded.  The County on the other hand argues that Plaintiff fails to plead any affirmative acts by Does 1 through 6 in the alleged sexual assault.  Doc. No. 6-1 at 17.  But the Court finds that Plaintiff plausibly pleads that Does 1 through 6 were integral participants in the alleged sexual assault.

Section 1983 imposes liability on "[e]very person who . . . subjects, or causes [a plaintiff] to be subjected . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."  42 U.S.C. § 1983.  Liability under § 1983 may not be premised on "team liability" or a "team effort."  *Jones v. Williams*, 297 F.3d 930, 935 (9th Cir. 2002).  And "in general, one does not subject someone to a deprivation of a constitutional right—or cause someone to be subjected to such a deprivation—simply by watching others violate the Constitution."  *Peck v. Montoya*, 51 F.4th 877, 889 (9th Cir.

2022) (internal quotation marks omitted) (cleaned up).  Thus, to be liable under § 1983, a defendant official "must be more than a 'mere bystander.'"  *Hernandez v. Skinner*, 969 F.3d 930, 941 (9th Cir. 2020) (quoting *Bravo v. Cty. of Santa Maria*, 665 F.3d 1076, 1090 (9th Cir. 2011)).  In the Ninth Circuit, "an official whose 'individual actions' do 'not themselves rise to the level of a constitutional violation' may be held liable under section 1983 only if the official is an 'integral participant' in the unlawful act."  *Peck*, 52 F.4th at 889 (quoting *Hernandez*, 969 F.3d at 941).  An official may be deemed an integral participant where they ordered the conduct that resulted in the constitutional deprivation.  *See Hernandez*, 969 F.3d at 942 (holding that an officer who had ordered that the plaintiff be "picked up" was an integral participant in the unlawful arrest).  And here, Plaintiff alleges that Does 1 through 6 ordered that Plaintiff be taken to Alvarado for the cavity search.  Compl. ¶ 56.  As such, the Court **DENIES** the County's motion to dismiss Claim 4 on this basis.

**E.    *Monell* Liability**

Plaintiff's sixth cause of action is against the County pursuant to *Monell v. Dep't of Social Services of the Cty. Of New York*, 436 U.S. 658 (1978).  Here, Plaintiff alleges that Does 1 through 6 ordered the cavity search in accordance with the County's policy.  *See* Compl. ¶¶ 209–212.  Plaintiff also alleges that the County inadequately trains its deputies.  *Id.* ¶ 215.  Thus, according to Plaintiff, the County "is liable for the deprivation of [his] constitutional rights under *Monell*[.]"  *Id.* ¶ 218.

These allegations are insufficient.  *Monell* provides that a local governmental entity:

> may not be sued under § 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694; *see also Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or

other local government may be liable under [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell*, 436 U.S. at 692)).  In order to establish liability for governmental entities under *Monell*, a plaintiff must prove: (1) that the plaintiff possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and (4) that the policy is the moving force behind the constitutional violation. *Dougherty v. Cty. of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Plumeau v. Sch. Dist. No. 40 Cnty. of Yamhill*, 130 F.3d 432, 438 (9th Cir. 1997)).  A single occurrence of unconstitutional action by a non-policy making employee is insufficient to establish the existence of an actionable municipal policy or custom.  *See Davis v. Cty. of Ellensburg*, 869 F.2d 1230, 1233–34 (9th Cir. 1989).  "Only if a plaintiff shows that his injury resulted from a permanent and well settled practice may liability attach for injury resulting from a local government custom."  *Thompson v. Cty. of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989) (internal quotation marks and citation omitted), *overruled on other grounds by Bull v. Cty. & Cnty. of San Fransisco*, 595 F.3d 964, 981 (9th Cir. 2010).

Plaintiff may pursue both an unconstitutional policy and a failure to train theory of *Monell* liability.  But he must put the County on notice of the substance of this claim and plead sufficient facts in support of these theories.  *Monell* provides a vehicle for holding municipalities liable for constitutional violations and, similar to 42 U.S.C. § 1983, is not the source of any substantive rights.  While Plaintiff identifies an express policy, *see* Compl. ¶ 87 ("San Diego Sheriff policy permits deputies to have anal cavity searches performed by medical staff, without a warrant, upon request of Sheriff deputies or supervisors."); *see also id.* ¶¶ 210–12, he fails to identify what constitutional provisions the County's cavity search policy allegedly violates.  For this reason, the Court finds that Plaintiff fails to adequately plead his *Monell* claim to the extent it is based on the County's manual cavity search official policy.

Additionally, Plaintiff's allegations regarding the failure to train theory are bereft. "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train"; "[i]n limited circumstances, a local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). For a failure to train theory, "[t]he issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy." *Long v. Cnty. of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006). As it falls within the greater policy of inaction or omission theory, the failure to train theory requires a showing of deliberate indifference. *See Doe v. Cty. of San Diego*, 35 F. Supp. 3d 1233, 1238 (S.D. Cal. 2014) (citing 9th Cir. Model Civ. Jury Instr. 9.7). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (quoting *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). It is only "when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights" and policymakers choose to retain that program that the city may be deemed deliberately indifferent. *Id.* Consequently, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* at 62 (quoting *Brown*, 520 U.S. at 409). "This is because adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the city liable." *Cty. Of Canton v. Harris*, 489 U.S. 378, 391 (9th Cir. 1989). Only under limited circumstances "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [municipality] can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390.

A review of Plaintiff's Complaint reveals that he has not adequately or plausibly pleaded *Monell* liability against the County under a failure to train theory.  In full, Plaintiff alleges:

> 215.   The training policies of COUNTY were inadequate to train its deputies to handle the usual and recurring situations with which they must deal. This includes training policies that were inadequate with respect to alternatives to anal cavity searches, necessary suspicion and evidence to justify an invasive cavity search, and when a warrant must be sought in pursuit of an anal cavity search.

> 216. The COUNTY was deliberately indifferent to the obvious consequences of its failure to train staff adequately.

> 217. The failure of COUNTY to provide adequate training caused the deprivation of Mr. Ramirez's rights, that is, the failure to train is so closely related to the deprivation of Mr. Ramirez's rights as to be the moving force that caused the ultimate injury.

Compl. ¶¶ 215–17.

These allegations merely recite the *Monell* legal standard and are devoid of factual enhancement.  Accordingly, Plaintiff fails to plausibly or adequately state his *Monell* claim based on a failure to train theory.  And because the Court finds that Plaintiff fails to put the County on notice of the substance of his *Monell* claim and fails to plausibly allege sufficient facts in support of his claim, the Court **DISMISSES** Claim 6.

**F.   State Law Claims**

Plaintiff's remaining eight claims are California state law claims: (Claim 9) battery; (Claim 10) medical battery; (Claim 11) assault; (12) sexual battery in violation of California Civil Code § 1708.5; (13) violation of the Bane Act, Cal. Civ. Code § 52.1; (14) negligence; (15) sexual harassment in violation of California Civil Code § 51.9; and (16) intentional infliction of emotional distress.  The County argues that it is immune from liability.  Doc. No. 6-1 at 25–27.  And Lopez challenges all except Claims 14 and 16.  Doc. No. 5-1 at 8–12.  The Court begins with the County and then turns to Lopez.

### 1.    *The County*

It is well-settled that there is no common law tort liability for public entities in California; municipal tort liability must be based on statute.  *See Miklosy v. Regents of Univ. of Cal.*, 44 Cal. 4th 876, 899 (Cal. 2008) ("[S]ection 815 abolishes common law tort liability for public entities.").  Pursuant to the California Government Code, "[e]xcept as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person."  Cal. Gov. Code § 815(a).  Section 815 eliminated all non-statutory forms of tort liability against public entities in California.  *See Becerra v. Cnty. of Santa Cruz*, 81 Cal. Rptr. 2d 165, 168 (Cal. Ct. App. 1998) ("In California, all government tort liability must be based on statute.") (citing Cal. Gov. Code § 815); *In re Groundwater Cases*, 64 Cal. Rptr. 3d 827, 848 (Cal. Ct. App. 2007) ("Of course there is no common law tort liability for public entities in California; such liability is wholly statutory.").

In support of the County's vicarious liability for all of these claims, Plaintiff relies on California Government Code § 815.2.  *See* Compl. ¶¶ 252, 263, 273, 284, 298, 208, 322.  Section 815.2 provides that public entities can be vicariously liable for the acts of their employees unless the employee is immune from liability.  Cal. Gov. Code § 815.2(a).  But this general vicarious liability statute is inapplicable here because, pursuant to California Government Code § 844.6, public entities may not be held liable for injuries to prisoners.  Cal. Gov. Code § 844.6(a)(2).  There are certain exceptions to this broad municipal immunity in the prison context, but none are identified or pleaded here.

That said, the Court finds that the County is not entitled to immunity for Plaintiff's Bane Act claim.  The Bane Act, Cal. Civ. Code § 52.1, provides a private cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or laws and rights secured by the Constitution or laws of California."  Cal. Civ.

Code § 52.1(a); *see also Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1040 (9th Cir. 2018) (explaining that the Bane Act "protects individuals from conduct aimed at interfering with rights that are secured by federal or state law, where the interference is carried out 'by threats, intimidation or coercion'") (quoting *Venegas v. Cnty. of Los Angeles*, 63 Cal. Rptr. 3d 741, 748 (Cal. Ct. App. 2007)).  Effective January 2022, the California legislature revoked public entities' immunity for Bane Act violations, including for injuries to prisoners under California Government Code § 844.6.  *See* Cal. Civ. Code 52.1(n) ("The state immunity provisions provided in Section[] . . . 844.6 . . . shall not apply to any cause of action brought . . . direct against a public entity that employs a peace officer or custodial officer[.]"); *cf. Freeman v. Mata*, No. EDCV 22-1732 JGB (KKx), 2023 U.S. Dist. LEXIS 74529, at *48–49 (C.D. Cal. Apr. 27, 2023). Thus, to the extent the County seeks dismissal of Plaintiff's Bane Act claim on the basis of its statutory immunity, the Court **DENIES** the motion.  Otherwise, the Court **GRANTS** the County's motion and **DISMISSES** Claims 9–12, 14, and 16 against the County.

### 2. *Lopez*

Lopez moves to dismiss Claims 9–13 and 15.  Beginning with Plaintiff's ninth cause of action, the elements of a claim for civil battery under California law are: (1) an intentional act by the defendant resulting in harmful or offensive contact with the plaintiff's person; (2) the plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss, or harm to the plaintiff.  *Piedra v. Dugan*, 21 Cal. Rptr. 3d 36, 48 (Cal. Ct. App. 2004); *see also Horton v. Cty. of San Diego*, No. 21-cv-00400-H-BGS, 2021 U.S. Dist. LEXIS 100740, at *13 (S.D. Cal. May 27, 2021) (citing *Brown v. Ransweiler*, 89 Cal. Rptr. 3d 801, 811 (Cal. Ct. App. 2009)).  Lopez argues that Plaintiff fails to plead facts suggesting she touched Plaintiff with the intent to harm him—that her intent was to determine whether Plaintiff was concealing contraband. Doc. No. 5-1 at 8.  However, under the Federal Rules of Civil Procedure, intent "may be alleged generally."  Fed. R. Civ. P. 9(b).  Moreover, under California law a battery is

1   "committed if there is unwanted intentional touching of any kind." *Conte v. Girard*
2   *Orthopaedic Surgeons Med. Grp., Inc.*, 132 Cal. Rptr. 2d 855, 859 (Cal. Ct. App. 2003).
3   And the element of intent may be satisfied if the "defendant acted with a 'willful
4   disregard' of the plaintiff's rights." *Ashcraft v. King*, 278 Cal. Rptr. 900, 904 (Cal. Ct.
5   App. 1991) (quoting *Lopez v. Surchia*, 112 Cal. App. 2d 314, 318 (Cal. Ct. App. 1952)).

6          Here, Plaintiff generally alleges that Lopez intended to perform the manual cavity
7   search, intentionally touching him over his objection, and that in doing so she willfully
8   disregarded Plaintiff's rights. *See, e.g.*, Compl. ¶¶ 90, 122, 148, 245, 247. This is
9   sufficient to state a claim for battery under California law. Lopez also argues that
10  "consent was not necessary as jail staff are allowed to seek body cavity searches of
11  inmates in reasonable circumstances." Doc. No. 5-1 at 9. Even assuming that is true,
12  Plaintiff pleads the search was unreasonable. Accordingly, the Court **DENIES** Lopez's
13  motion to dismiss Plaintiff's battery claim (Claim 9).

14         As to Claim 10 for medical battery, it appears that the facts as pleaded do not
15  support such a claim. First, on this record, the manual cavity search is not plausibly
16  alleged to be medical treatment or a medical procedure. *See Conte*, 132 Cal. Rptr. 2d at
17  860 ("A typical medical battery case is where a patient has consented to a particular
18  treatment, but the doctor performs a treatment that goes beyond the consent."). It is also
19  not clear that Plaintiff can pursue this claim against non-medical personnel such as Does
20  1 through 6. California legal authority strongly suggests that a medical battery is simply
21  a battery in the medical context; that the tortious touching is medical in nature or serves
22  some medical purpose. *See id.* ("In the medical battery context, the scope of the consent
23  is important because the gist of such battery is that the doctor has intentionally touched
24  the patient without consent or in a manner that exceeds the consent and without
25  justification."); *see also Gutzalenko v. Cty. of Richmond*, No. 22-cv-02130-EMC, 2024
26  U.S. Dist. LEXIS 46373, at *19 (N.D. Cal. Mar. 15, 2024) ("Providing medical treatment
27  to a person without their consent constitutes a battery.") (citing *Rainer v. Community*
28  *Memorial Hospital*, 95 Cal. Rptr. 901 (1971)); *So v. Shin*, 151 Cal. Rptr. 3d 257, 269

1  (Cal. Ct. App. 2013) ("A medical battery occurs where 'a doctor obtains consent of the

2  patient to perform one type of treatment and subsequently performs a substantially

3  different treatment for which consent was not obtained . . . .'") (quoting *Cobbs v. Grant*,

4  104 Cal. Rptr. 505, 511 (Cal. 1972)); *Cobbs*, 104 Cal. Rptr. at 511 ("Where a doctor

5  obtains consent of the patient to perform one type of treatment and subsequently

6  performs a substantially different treatment for which consent was not obtained, there is a

7  clear case of battery."). So this claim appears to be inappropriate on these facts and/or

8  duplicative of Claim 9. For these reasons, the Court finds that Plaintiff has not stated a

9  claim for medical battery and therefore **DISMISSES** Claim 10.

10  Next, Plaintiff pleads a claim for civil assault. Under California law, the elements

11  of an assault claim are:

13  (1) the defendant acted with intent to cause harmful or offensive contact, or
threatened to touch the plaintiff in a harmful or offensive manner; (2) the

14  plaintiff reasonably believed he was about to be touched in a harmful or

15  offensive manner or it reasonably appeared to the plaintiff that the defendant
was about to carry out the threat; (3) the plaintiff did not consent to the

16  defendant's conduct; (4) the plaintiff was harmed; and (5) the defendant's

17  conduct was a substantial factor in causing the plaintiff's harm.

18  *Carlsen v. Koivumaki*, 174 Cal. Rptr. 3d 339, 351 (Cal. Ct. App. 2014).

19  Having considered Lopez's arguments in support of dismissal, the Court finds they

20  are without merit. Lopez only argues that "[n]ot all cavity searches require a warrant,"

21  and that it was reasonable for her to rely on the deputies' representations. Doc. No. 5-1 at

22  9. But as discussed above, Plaintiff pleads that the search was unreasonable and in

23  violation of the Fourth Amendment. Therefore, the Court **DENIES** Lopez's motion to

24  dismiss Claim 11.

25  Twelfth, Plaintiff pleads a claim for sexual battery in violation of California Civil

26  Code § 1708.5. Relevant here, a sexual battery occurs under California law when a

27  person "[a]cts with the intent to cause a harmful or offensive contact with an intimate part

28  of another, and a sexually offensive contact with that person directly or indirectly

results." Cal. Civ. Code § 1708.5(a)(1).  Lopez argues that she is a medical doctor and that the contact was not sexually offensive or done for a sexual purpose.  Doc. No. 5-1 at 10.  But the statute defines "offensive contact" as "contact that offends a reasonable sense of personal dignity," Cal. Civ. Code § 1708.5(d)(2), and Plaintiff pleads that the contact was sufficiently offensive.  Compl. ¶¶ 125, 276.  Plaintiff also pleads facts, which accepted as true, plausibly suggest a sexual purpose.  *Id.* ¶¶ 117, 276.  Consequently, the Court **DENIES** Lopez's motion on this basis.

Plaintiff's thirteenth claim is for violation of the Bane Act, Cal. Gov. Code § 52.1, against all Defendants.  As noted above, the Bane Act provides a private cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion," with the constitutional rights of another. Cal. Civ. Code § 52.1(a); *see also Reese*, 888 F.3d at 1040.  To state a claim under the Bane Act, the threat, intimidation, or coercion need not be transactionally independent from the constitutional violation, but there must be the specific intent to violate the plaintiff's rights.  *Reese*, 888 F.3d at 1043 (quoting *Cornell v. Cty. & Cnty. of San Fransisco*, 225 Cal. Rptr. 3d 356, 382–83 (Cal. Ct. App. 2017)); *see also Rodriguez v. Cty. of L.A.*, 891 F.3d 776, 802 (9th Cir. 2018).

Lopez argues that Plaintiff's Bane Act claim must be dismissed because Plaintiff has not alleged that Lopez used excessive force against him.  Doc. No. 5-1 at 11.  But for the reasons discussed above, the Court disagrees.  Lopez also argues that Plaintiff fails to allege any facts demonstrating she used threats, intimidation, or coercion, in her interactions with Plaintiff.  *Id.*  But "in excessive force cases, including Eighth Amendment cases, § 52.1 does not require proof of coercion beyond that inherent in the underlying violation." *Rodriguez*, 891 F.3d at 802.  Accordingly, the Court **DENIES** Lopez's motion on this basis.

Finally, Lopez challenges Plaintiff's fifteenth claim, for sexual harassment in violation of California Civil Code § 51.9.  As relevant here, California Civil Code § 51.9 provides that "[a] person is liable in a cause of action for sexual harassment under this

section when the plaintiff proves" that "[t]here is a business, service, or professional relationship between the plaintiff and defendant" such as where the defendant is a physician, "[t]he defendant has made sexual advances, solicitations, sexual requests, demands for sexual compliance by the plaintiff, or engaged in other verbal, visual, or physical conduct of a sexual nature or of a hostile nature based on gender, that were unwelcome and pervasive or severe[,]" and the plaintiff suffered damages.  Cal. Civ. Code § 51.9(a).

Here, Plaintiff pleads that Lopez is a doctor and that she engaged in unwanted verbal and physical sexual conduct towards Plaintiff.  Compl. ¶¶ 23, 117–118.  This is sufficient to state a claim for sexual harassment.  The Court therefore **DENIES** Lopez's motion to dismiss Claim 15.

## G.  Immunity

Both Lopez and the County raise immunity arguments: Lopez asserts she is immune under the Eleventh Amendment, Doc. No. 5-1 at 12, and the County contends the Doe Defendants are entitled to qualified immunity, Doc. No. 6-1 at 27.

The Eleventh Amendment bars federal jurisdiction over suits by individuals against a state and its instrumentalities or agencies, unless either the state consents to waive its sovereign immunity or Congress abrogates it.  *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 99–100 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (per curiam).  In addition, "the eleventh amendment bars actions against state officers sued in their official capacities for past alleged misconduct involving a complainant's federally protected rights, where the nature of the relief sought is retroactive, i.e., money damages."  *Bair v. Krug*, 853 F.2d 672, 675 (9th Cir. 1988).

Here, Lopez is sued in her individual capacity.  *See* Compl. ¶ 23.  And the Eleventh Amendment does not prohibit § 1983 claims against state actors sued in their individual capacities.  "[A] section 1983 suit against state actors necessarily implies a suit against the defendants in their personal capacities."  *Cerrato v. San Francisco Community College Dist.*, 26 F.3d 968, 973 n.16 (9th Cir. 1994).  Section 1983 creates a

private right of action against any "person" who under color of state law deprives an individual of his "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  This civil rights statute was not intended to abrogate the states' Eleventh Amendment immunity, as the plain language of the statute only authorizes actions against "persons." *Demery v. Kupperman*, 735 F.2d 1139, 1143 (9th Cir. 1984); *Doe v. Lawrence Livermore Nat'l Lab*., 131 F.3d 836, 839 (9th Cir. 1997).  Moreover, "a state official who violates federal law is in that case stripped of his official or representative character and is subjected *in his person* to the consequences of his individual conduct." *Demery*, 735 F.2d at 1146 (emphasis in original) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 237 (1974)).  As the Ninth Circuit has explained:

> The doctrine of *Ex parte Young* is premised on the notion that a state cannot authorize a state officer to violate the Constitution and laws of the United States. Thus, an action by a state officer that violates federal law is not considered an action of the state, and therefore, is not shielded from suit by the state's sovereign immunity. *Pennhurst*, 465 U.S. at 102; *Ex parte Young*, 209 U.S. at 159-60 (The officer is "stripped of his official or representative character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States."). Therefore, a plaintiff may bring suit in federal court against a state officer accused of violating federal law. *Pennhurst*, 465 U.S. at 102.

*Natural Res. Def. Counsel v. Cal. DOT*, 96 F.3d 420, 422 (9th Cir. 1996).

Accordingly, to the extent Lopez seeks dismissal of Plaintiff's § 1983 claims based on immunity under the Eleventh Amendment, the Court **DENIES** her motion.

The County, on the other hand, asserts that the Doe Defendants are entitled to qualified immunity.  Doc. No. 6-1 at 27–29.  "Government officials enjoy qualified immunity from civil damages unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Jeffers v. Gomez*, 267 F.3d 895, 910 (9th Cir. 2001) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "To determine whether a government official is entitled to qualified

immunity, we ask two questions: whether the official violated a statutory or constitutional right, and whether that right was clearly established at the time of the challenged conduct." *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th Cir. 2013); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Courts may address either question first.  *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("[W]hile the sequence set forth [in *Saucier*] is often appropriate, it should no longer be regarded as mandatory.").

"The Supreme Court has 'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage of litigation.'" *Dunn v. Castro*, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).  However, the Ninth Circuit has found that "[d]etermining claims of qualified immunity at the motion-to-dismiss stage raises special problems for legal decision making," *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018), particularly where the Court is "aided only by the skeletal . . . factual picture sketched out in the complaint," *Kwai Fun Wong v. United States INS*, 373 F.3d 952, 956 (9th Cir. 2004).  Thus, "[w]hen, as here, defendants assert qualified immunity in a motion to dismiss under Rule 12(b)(6), dismissal is not appropriate unless we can determine, based on the complaint itself, that qualified immunity applies." *O'Brien v. Welty*, 818 F.3d 920, 936 (9th Cir. 2016) (internal citation omitted)).

According to the County, "there was no clearly established law at the time that would make it clear to a reasonable officer, under the circumstances facing these defendants, that their conduct was unlawful."  Doc. No. 6-1 at 29.  But the Court cannot determine based on the face of the Complaint that the Does are entitled to qualified immunity.  The Ninth Circuit has cautioned that "[i]f the operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to go forward' with their claims." *Keates*, 883 F.3d at 1235 (quoting *Pelletier v. Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 872 (9th Cir. 1992)).  Here, Plaintiff has plausibly pleaded Fourth and Eighth Amendment claims against the Doe Defendants.  In short, Plaintiff

pleads that the Does, during various times, subjected Plaintiff to strip searches and a manual body cavity search despite being aware that both prior examinations revealed no indication of contraband and that less invasive measures were available.  Plaintiff further alleges that these searches served no penological purpose.  Accepting these facts as true, as the Court is required to do here, the Court cannot say the Doe Defendants are entitled to qualified immunity.  Therefore, the Court **DENIES** the County's motion on this basis without prejudice to the Doe Defendants raising the qualified immunity defense at summary judgment.

## IV. CONCLUSION

Based upon the foregoing, the Court **GRANTS IN PART** the County's motion and **GRANTS IN PART** Lopez's motion.  The Court **DISMISSES**: Claim 2 in its entirety; Claim 6 in its entirety; Claim 9 against the County; Claim 10 in its entirety; Claim 11 against the County; Claim 12 against the County; Claim 14 against the County; and Claim 15 against the County.  Dismissal is with leave to amend only to the extent Plaintiff can plead facts curing the deficiencies noted above.  Should Plaintiff wish to file an amended complaint, he must do so on or before **June 5, 2024**.  Defendants may then respond within the time prescribed by Federal Rule of Civil Procedure 15.  Any defendants not named and any claim not realleged in the amended complaint will be considered waived. *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

**IT IS SO ORDERED**.

Dated:  May 15, 2024

HON. MICHAEL M. ANELLO
United States District Judge